Stephen TERRY and Barbara B. Terry; Ralph A. Malone; Virginia Higuera; Patrick D. Hudson; Ruth C. Newcomer; John P. Krischak and Mary Ann Kirschak: Jacqueline Peterson; Ruben Rios; Lynette Escobar; Joseph P. McCraren and Kathryn McCraren; Joyce E. Chadburn; Trudy Neff; Arthur W. Riley and Dianne P. Riley; Domingo A. Sison and Darlene A. Sison; Ellis Baughman and Barbara L. Baughman; Betty Lee Peterson and George Walrabenstein; Robert Ohahanian; Seth E. Southard and Cynthia J. Southard; Elizabeth Ann Bailey; Octavio Marquez; on their own Behalf and on Behalf of all others similarly situated, Plaintiffs,

v.

John R. BLOCK, Secretary, U.S. Dept. of Agriculture; John B. Crowell, Jr., Asst. Sec. for Natural Resources and Environment, U.S. Dept. of Agriculture; R. Max Peterson, Chief, U.S. Forest Service, U.S. Dept. of Agriculture; Gary F. Cargill, Assoc. Deputy Chief, U.S. Forest Service; M.J. Hassell, Regional Forester, Southwestern Region U.S. Forest Service; R.B. Tippeconnic, Forest Supervisor, Coronado Natl Forest, U.S. Forest Service, Defendants.

No. Civ. 84–1006TUC–WDB.

United States District Court, D. Arizona.

May 24, 1985.

**814**

O'Dowd, Burke & Lundquist, Erik M. O'Dowd, Tucson, Ariz., for plaintiffs.

Stephen M. McNamee, U.S. Atty., Dist. of Arizona, Don B. Overall, Tucson, Ariz., for defendants.

**WILLIAM D. BROWNING, District Judge.**

This matter is before the Court on the parties' cross motions for summary judgment. The motions were argued before the Court on May 15, 1985, and the Court took them under advisement. The Court issued a minute entry granting defendants' motion for summary judgment and denying plaintiffs' motion, and stating that a formal order would follow.

Plaintiffs were holders of special-use permits for recreational residences in Madera Canyon, located in Coronado National For-est. The permits expired December 31, 1984.

In 1972, the Forest Supervisor of Coronado National Forest issued a decision letter advising the special-use permit holders that the permits would expire December 31, 1982. The permit holders appealed; utimately, an environmental impact statement was prepared showing the need to limit residential use of Madera Canyon, and the termination date was extended to December 31, 1984.

The 1984 date was also appealed by some, but not all, permittees. A settlement was reached whereby those who had carried the appeal to the Board of Forest Appeals were issued permits which were effective through December 31, 1990, but others were held to the 1984 date.

The settlement decision was challenged in federal court. Judge Alfredo C. Marquez found that the termination of the special-use permits is reasonably related to a legitimate governmental goal, that facts in the record support the decision to terminate, and that the distinction for purposes of settlement between persons who did not pursue the appeal to the Board of Forest Appeals and those who did is not invidious discrimination, but a reasonable distinction within the discretion of the Forest Service. *Bailey v. Block*, CIV 80–154–TUC–ACM (D.Ariz.), Order, Dec. 8, 1981 at 6.

The permit holders now challenge the 1984 termination date on new grounds.

Because the cost of real property rose steeply in the 1970s, and the Forest Service pegged its fees to the market, the cost of permits rose dramatically in the 1970s. Congress decided that the rise had been too steep and that it threatened to limit availability of use permits in the national forests to those who were wealthy. Congress passed appropriation acts for fiscal years 1983, 1984 and 1985 that entitle permit holders to certain amounts as fee credits "to offset future fees owed to the Forest Service." P.L. 97–394, 96 Stat. 1985 (Dec. 30, 1982); P.L. 98–146, 97 Stat. 919 (Nov. 4,

1983); P.L. 98–473, 98 Stat. 1837 (Oct. 12, 1984).

The acts state in pertinent part:

None of the funds made available under this Act shall be obligated or expended to adjust annual recreational residence fees to an amount greater than that annual fee in effect at the time of the next to last fee adjustment, plus fifty per centum. In those cases where the currently applicable annual residence fee exceeds that adjusted amount, the Forest Service shall credit that excess amount, times the number of years that that fee has been in effect, to offset future fees owed to the Forest Service.

*Id.* This paragraph is known as "amendment 100." The initial senate version provided for a credit or reimbursement to the permittee. H.R. 7356, 97th Cong., 2d Sess. at 46. In the conference report, the reimbursement provision was eliminated. H.Rep. No. 97–978, 97th Cong., 2d Sess. 32 (Amendment No. 100) (Dec. 17, 1982).

The plaintiffs would be entitled to fee credits if they owed future fees. ⸢They argue that the 1984 termination of their special-use permits, before receipt of the full credit due under the fee credit provision, takes their property without due process of law and in denial of equal protection of the laws. The plaintiffs maintain that the Forest Service must extend the permits until the permit holders have been credited the full amounts they have "overpaid."

This is a challenge to an administrative decision. The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, provides in relevant part that a reviewing court shall:

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) Arbitrary, capricious or an abuse of discretion or otherwise not in accordance with the law;

(B) Contrary to constitutional right, power, privilege, or immunity.

5 U.S.C. § 706.

■ A reviewing court must make its own determination of the law. *SEC v.*

*Chenery,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); 5 U.S.C. § 706. The starting point in a case involving construction of a statute is the statutory language itself. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). If the terms are unambiguous, the inquiry is ordinarily complete. *Id.* However, congressional intent behind a piece of legislation may persuade a court that Congress did not intend the words to have their literal effect. *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). The parties have focused most of their dispute on the question of how much deference the Court should give to the agency interpretation of the statute. The Court need not consider that question, because it finds that neither the plain meaning of the statute nor the congressional intent in providing fee credits requires the Forest Service to extend permits that it lawfully decided to terminate.

*Plain Meaning*

■ The statutes say that the Forest Service shall credit the excess amount, as calculated by the statutory formula, "to offset future fees owed to the Forest Service."

Where there are no future fees owed, there is nothing against which the Forest Service can credit an amount. The statutes simply provide for a credit against future fees owed, and no other "remedy" for having paid inflated market prices in recent years.

The inflated amounts charged for permits were legitimate when charged; the Forest Service had authority to set rates, and was not "overcharging." Congress simply decided later that the rate of rise was too steep, and fees too high, so Congress provided retroactively for relief for those who still had future fees owing, including, for fiscal 1985, those who received new permits for the same residence.

*Legislative Intent*

The House Appropriations Committee Report on the initial fee credit states:

The Committee does not believe fee structures should be set so high that they restrict access to our national assets to only the wealthy. Indeed, the Committee is interested in establishing fair fee structures derived from its goal of sustaining a program as broad and open to as many people as possible.... [T]he Committee requests that [the agencies review the laws and regulations] with the objective of providing a means of reducing increases in those fees to a level more approximating the consumer price index.

H.Rep. No. 97–942, 97th Cong., 2d Sess. 79 (Dec. 2, 1982).

The Conference Committee Report states:

[T]he current methodology for establishing and revising recreational residence fees has led to enormous increases in fees ... and has thereby restricted access to residence sites to the wealthy. This amendment provides needed fee relief.

H.Rep. No. 97–978, 97th Cong., 2d Sess. 32 (Dec. 17, 1982).

The committee statements indicate an intention that there be some kind of equality in access to permits for both the rich and the less rich. By providing retroactive relief to lighten the loads of those who had permits, Congress helped enable those who were not wealthy to keep their permits and not be forced to sell. But Congress expressed no general intention to disgorge gains and to offer relief to everyone who had paid steep fees—those who had already sold their recreational residences had no relief. The lack of relief for those who had sold their recreational residences is consistent with the intent to provide more open access. For the government to pay those who no longer have permits would do nothing to increase access to the less wealthy. A permittee whose permit expires while fee credits are still "owing" is in the same situation as a person who has sold the recreational residence.

The Forest Service acted properly and within the scope of its authority by providing that the Madera Canyon permits expire in 1984. *Bailey v. Block* at 6–7. The rationale for the 1984 termination date is environmental. It is independent of monetary concerns. Congress did not intend in the fee credit provision that the Forest Service must extend expiring permits. It would have been inimical to environmental goals for Congress to have provided that the Forest Service extend permits whenever fee credits were "owing," in situations where the Forest Service decided for environmental reasons to terminate permits. Congress could have provided for reimbursement in these limited situations, but did not. Congress did not intend to provide something akin to restitution, but rather to render access to forests more equal by income. Neither reimbursement nor extension of permits furthers that goal. In this case, one of the concerns behind the termination of the permits is that Madera Canyon be available, with sufficient, clean water, for more general use by the public. *Bailey v. Block* at 3–4, 7. Thus the decision to terminate the permits actually furthers the congressional goal of providing more equal access, that is, of "sustaining programs as broad and open to as many people as possible ..." H.Rep. 97–942, 97th Cong., 2d Sess. 32.

The Forest Service acted within its authority in deciding to terminate the permits. Congress acted within its authority when it provided fee relief for those who still owe fees. Nothing in the language of the acts or in the congressional intention behind those acts requires the Forest Service to extend permits where it has decided, for environmental reasons, that recreational residences are no longer appropriate, and that special-use permits should expire.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is GRANTED, and plaintiffs' motion for summary judgment is DENIED.